## DICKSON *v.* PATTERSON.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 15.  Submitted October 15, 1895. — Decided January 6, 1896.

In May, 1885, P., having an opportunity to purchase ten acres of land near Omaha, at a cost of $3600, payable $1250 in cash, the rest on credit, wrote to D. that he could buy the tract for $4800, payable $2500 in cash, the rest on credit, and asked him to join in the purchase.  D. assented, sent his $1250 to P., and joined in a mortgage for the balance of the purchase money.  In October, 1885, P. wrote to D. that he had sold the ten acres to B. for $6000, $3000 of which were in cash, and enclosed a cheque for $1500, and a deed to B. to be executed by D. in which the consideration was expressed at $6000.  This amount was subsequently changed to $10,000 without D.'s knowledge.  On the day after receiving the deed, B. reconveyed the property to P.  The land was laid out into lots and streets under direction of P., and some of the lots were sold to *bona fide* purchasers.  After the institution of this suit, the remainder was conveyed by P. to one M., for a recited consideration of $19,425.  In February, 1887, the deception practised by P. as to the price of the land, and as to the change in the consideration of the deed to B. came to the knowledge of D., who thereupon wrote P., calling upon him to refund the overpayment in the purchase money, and to pay him one half of the increase in the amount of the consideration for the deed to B.  P. made no payment, and commenced a correspondence which lasted until D. became possessed of knowledge of the reconveyance by B. to P.  This bill in equity was then filed by D., praying for an accounting, and that he be decreed

entitled to all the benefits of the original purchase, and that the deed to B., the deed from B. to P., and the deed from P. to N. be declared fraudulent; that P. be required to convey to D. so much of the premises as had not been conveyed to other parties for a valuable consideration; that he account to plaintiff for the sums received from such sales, and that he be restrained from selling other lots. The court below dismissed the bill on the ground that D. had elected to retain what he had received and to pursue his claim for moneys still due, and could not maintain a suit to set the whole transactions aside. *Held,*

(1) That the plaintiff was entitled to a decree setting aside and annulling the deed purporting to have been executed by P. to M., the deed from B. to P., and the deed to B. from P. and D., leaving the title to the premises in question where it was prior to the execution of the last named deed; such decree to be without prejudice to any valid rights acquired by parties who purchased in good faith from P. while the fee was in him alone;

(2) That the cause should be referred to a commissioner for an accounting between D. and P. in respect of the sums paid by them, respectively, on the original purchase; as evidenced by the deed of 1885, to P. and D.; D. in such accounting to have credit for one-half of all amounts received by P. on the sales by him of any of the lots into which the ten acres were subdivided, and P. to have credit for any sums paid by him in discharge of taxes or other charges upon the property.

THE case is stated in the opinion.

*Mr. Westel W. Morsman* for appellant.

*Mr. John L. Webster* and *Mr. H. D. Estabrook* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was brought to procure a decree rescinding certain sales of real estate on the ground of fraud.

The case made by the original and amended bill of the appellant, who was plaintiff below, is substantially as follows:

Plaintiff and defendant Patterson married sisters and had been friends for a long time. The former had expressed a wish to join the latter upon equal terms in the purchase of real estate in or near Omaha, Nebraska, with a view to platting the same into lots as an addition to that city.

Defendant accordingly wrote to plaintiff on May 18, 1885, stating that he was about to purchase ten acres of land, and that "this ten acres of land will cost $4800, $2500 cash. They will make 48 lots worth $250 each. If you want to go in it will cost you $1250 cash, balance to suit." The plaintiff having made further inquiries by letter, defendant answered that the expenses of surveying, advertising and platting the property would be about $300, and the net profits at least $6000; that they would probably not be called upon to make the deferred payments; that he, defendant, had realized large profits from other like ventures; that other persons desired to join him; and he urged plaintiff to do so.

Relying upon the above statements, plaintiff accepted the proposition, and subsequently sent defendant Patterson the sum of $1250 as his half of the cash payment. His wife joining him, he signed a mortgage for the balance of the purchase money, dated June 10, 1885, the same to be executed also by defendant and wife. This mortgage was sent to Dickson by Patterson for execution.

On June 9, 1885, the premises were conveyed by deed to plaintiff and Patterson, jointly, the consideration stated in it being $4800. The deed was duly recorded.

Patterson caused the premises to be laid out in lots and streets, the plat of which was recorded as "Patterson and Dickson Place." After writing several letters to plaintiff, speaking in the most encouraging terms of the probability of realizing large returns from the venture, Patterson, on October 21, 1885, wrote to Dickson: "I have sold our ten acres today for $6000, an advance of $1200. It did not turn out as well as I expected. . . . This is a very handsome profit for the length of time we have held it. He pays $3000 cash and the other $700 inside of six months, and assumes the mortgage and all taxes. It nets us a little over $500 each profit."

On October 30, 1885, Patterson enclosed his check for $1500 to plaintiff, correcting his statement as to net profits by the statement that $224.18 was yet due and coming to the plaintiff. He also enclosed a deed to one Otto Boehme, to be

signed by plaintiff and wife, in which the consideration was expressed to be $6000. That deed was dated October 28, 1885, and was duly executed by plaintiff and wife, but the amount of the consideration as set forth in the deed was thereafter changed without plaintiff's knowledge to $10,000. On the day after the conveyance to Boehme, the latter, without plaintiff's knowledge, reconveyed the property to Patterson, the consideration recited being $10,000. On February 23, 1886, Patterson vacated the plat made by him and plaintiff, and replatted the premises as "East Side Addition," of which he sold several lots.

After the filing of the original bill, Patterson filed for record a deed dated June 4, 1887, conveying all the premises, with the exception of eight lots, to one Isaac Martin, who was made a party defendant in the amended bill. That deed purported to have been made in execution of an agreement with Martin, he having failed to make payment pursuant to a prior contract alleged to have been made on February 17, 1887.

Long after the transactions above referred to, it became known to Dickson — and he so charged in his bill — that the purchase price of the premises in question was not $4800 but $3600 and the cash payment $1250 and no more, all of which was paid by the plaintiff; that the conveyance to Boehme and reconveyance by him to Patterson were fraudulent, having been made without consideration, and executed in pursuance of the preconcerted design of the latter to vest the title in himself.

Whereupon the plaintiff prayed that inasmuch as he had paid all the consideration for the premises, and as the defendant Patterson had advanced no part thereof, he, the plaintiff, was entitled to have all of the said premises and all the advantages arising from the said purchase. He further prayed that inasmuch as the deed to Boehme and the deed from Boehme to Patterson were fraudulent and void, an accounting be directed of all sums received by Patterson in that behalf, and also all sums received by plaintiff from him, and that it be ascertained what sum, if any, plaintiff should repay to him; which he offered and stood ready to pay as soon as ascer-

tained; that it be decreed that the plaintiff was entitled to have all the benefits of the original purchase; and that by the deed made to plaintiff and Patterson, the latter became seized in fee of an undivided half of the premises *in trust for the plaintiff*, and not otherwise. The bill further prayed that the deed made by plaintiff and wife together with Patterson and wife to Boehme, and as well as the deed made by Boehme to Patterson, and the deed from Patterson to Martin, be declared fraudulent and void; that it be decreed that Patterson convey the premises to the plaintiff in fee, except such lots as had been sold to other parties for a valuable consideration without his knowledge; that Patterson account to the plaintiff for the sums of money realized from such sales; and also that he be restrained from selling any other lots, or receiving any money on account of said sales, or transferring any security therefor, etc.

The bill was dismissed upon the ground that the plaintiff, after acquiring knowledge of the fraud, elected to retain what he had received from the sale of the land in question, and to pursue his claim for moneys claimed to be still due; that the fraud alleged having come to his knowledge, he was bound promptly to make his election, and having elected to let the sale stand, he could not thereafter maintain an action to set it aside.

This ruling was based upon certain letters offered in evidence from which it appeared that Dickson first charged Patterson with fraud in 1886, and wrote him on February 27 of that year, stating, among other things: "In your letter last October you state you sold it for $6000, and the deed called for the same amount, but I notice the records, etc., call for $10,000 — a slight difference of $4000. This change seems to have occurred after the paper left Kansas City. Then, too, I object to the original cost of the land as stated in your letter last May, viz., $4800, ($2500 cash and $2500 in note,) when I know now that the land only cost $3600, or a difference of $1200, making my half interest cost $600 less than you stated, which, taken together with my half of the $4000 which you did not report, would be something like $2600 which you are owing me. I

cannot say with you, 'thus far my feelings alone have been affected,' but you have taken money from me by false representations, the knowledge of which fact has only lately come to my hands. Now, I wish to know when you propose to pay me the above amount due me." Patterson replied to this letter on March 3, 1886, explaining that the amount of consideration in the deed had been changed at Boehme's request; and as to the land being purchased originally for $3600 it was not true. He added that he did not blame him for being aroused over such a false report, but that he, Patterson, could "explain all discrepancies in a manner that cannot be impeached, and when necessary can be proven up with living testimony and plenty of it." Boehme, also, at the instance of Patterson, wrote to Dickson, under date of March 2, 1886, stating that the consideration paid by him for the land was $6000 and no more; that the amount expressed in the deed to him was changed at his request in order that he might the more easily secure a large profit; and that he believed Patterson was honest and straight, and bore that reputation.

After some further correspondence with a view to a settlement — Patterson insisting that a balance was due him from plaintiff on account of a certain other real estate transaction in Kansas City — Dickson, on August 4, 1887, filed his bill in equity, praying a rescission of these sales and an accounting, as hereinbefore set forth.

The bill having been dismissed, for the reasons above stated, Dickson took an appeal to this court.

The evidence fully sustained the allegations of fraud made in the original and amended complaint. We cannot doubt from the record that after the land in question was purchased and conveyed to the plaintiff and defendant Patterson, jointly, the latter conceived the purpose of acquiring the title to the whole of it. To that end he pretended to have made a sale of it to Boehme, and induced the plaintiff not only to believe that it was a real sale at a named price, but to join in the deed to Boehme. The day after the title was vested in Boehme the latter reconveyed the property to Patterson. According to the preponderance of evidence that transaction

was a sham, but not more so than the pretended sale and conveyance to one Martin. That which purports to be a deed to Martin, reciting a consideration of $19,425 in hand paid, was in fact executed after the institution of this suit, although dated and certified to have been acknowledged on the 4th day of June, 1887. It would subserve no useful end to set forth in this opinion all the facts and circumstances bearing upon the issue of fraud. But we may remark that, according to the evidence, some one assumed the name of Martin long enough to go through the form of a purchase from Patterson, after which he disappeared, his whereabouts pending this suit being unknown, although his answer was filed by direction of Patterson.

We content ourselves with saying that the proof makes it clear that the pretended sales to Boehme and Martin were in execution of a scheme devised by Patterson to deprive Dickson of his interest in these lands without his receiving the full value of such interest, and thus to become himself the sole owner.

This was substantially the view taken of the case by the Circuit Court. The presiding judge not only expressed the fear that the charges of fraud and misconduct were well founded, but said that the testimony of the defendant Patterson was impeached by so many circumstances that it could not be safely made the basis of judicial action. Assuming the charges of fraud to have been proved, the court dismissed the bill upon the ground that the plaintiff's letters, written in 1886, show that he, " with knowledge of the fraud, not only retained what he had received from the sale, but elected to let it stand and pursue his claim for the moneys still due him thereon." Undoubtedly, it appears from these letters that the plaintiff charged that Patterson had falsely represented the original cost of the land (one-half of which Dickson was to pay) to have been $4800, when it was only $3600, and that the deed to Boehme, at the time it was executed by plaintiff and his wife, recited the consideration to be $6000, (the amount for which Patterson said he had sold the ten acres,) and yet, when put on record, it recited $10,000 as the consid-

eration. Upon the basis of $3600 as the price originally paid for the lands by Patterson representing himself and the plaintiff, and $10,000 as the amount paid by Boehme, the plaintiff rightfully claimed a larger sum than had been paid to him by Patterson. If this were the whole case there would be force in the suggestion that Dickson, with information of the fraud practised upon him, had elected to affirm the sale to Boehme and to claim the additional sum that he supposed to be due him upon a proper accounting.

But there are other considerations which preclude Patterson from insisting that Dickson made his election of remedies, and must abide by that election. During the correspondence that took place between the parties in 1886 Dickson, so far as the record shows, was not aware that the sale and conveyance to Boehme was merely fictitious, and in execution of Patterson's scheme to defraud him. Patterson assured him that that sale was a real one, and there is no proof to show that Dickson, at the time, knew or believed anything to the contrary. If it was a real sale, Dickson, having joined in the deed to Boehme, could not go behind it, unless he could show that the latter did not purchase in good faith. But, from what Patterson wrote to him, he had no reason to doubt the validity of the sale to Boehme. Besides, Patterson induced Boehme to inform Dickson by letter that the amount paid was only $6000, and that it was changed in the deed to $10,000 at his, Boehme's, request, and that Patterson was an honest man, with a good reputation. All this was well calculated to make the impression upon Dickson that the only relief he could have against Patterson was to obtain an accounting, and a decree or judgment for such additional sum as was justly due him.

After the correspondence between the parties ended in the latter part of the year 1886, the plaintiff, as we must assume from the record, ascertained for the first time all the facts as they are now disclosed, and, without unreasonable delay, commenced the present suit. We should not be justified by the record in saying that he had, for any considerable time before the bringing of this suit, such knowledge of all the circum-

stances of this transaction as enabled him to know with certainty what his rights were, and to determine what course should be taken to vindicate them. If, as the evidence shows, the real facts were concealed from him by one from whom he had reason to expect a frank disclosure of all the material circumstances as they occurred, he is not, for that reason — no rights of innocent third parties having intervened — to be denied the fullest relief to which according to the principles of equity he is entitled.

The plaintiff, in his amended complaint, claims that he paid the original consideration for these lands, and is entitled to a conveyance of them upon his paying to the defendant Patterson such sum as, upon a proper accounting, he ought to pay, Patterson being charged with such sums as he received on account of the premises or the lots into which they were divided by him.

We are of opinion that the plaintiff is not entitled to relief to that extent. But he is entitled to a decree setting aside and annulling the deed purporting to have been executed by Patterson to Martin, the deed from Boehme to Patterson, and the deed to Boehme from Patterson and Dickson and their wives, respectively, leaving the title to the premises in question where it was prior to the execution of the last named deed ; such decree to be without prejudice to any valid rights acquired by parties who purchased in good faith from Patterson while the fee was in him alone. The cause should be referred to a commissioner for an accounting between Dickson and Patterson in respect of the sums paid by them, respectively, on the original purchase, as evidenced by the deed of June 9, 1885, from Tukey and Keysor and their wives, respectively, to Patterson and Dickson ; Dickson in such accounting to have credit for one half of all amounts received by Patterson on the sales by him of any of the lots into which the ten acres were subdivided, and Patterson to have credit for any sums paid by him in discharge of taxes or other charges upon the property.

*The decree is reversed, and the cause remanded for such further proceedings as are not inconsistent with this opinion.*