RICHARDSON v. CONTINENTAL NAT. BANK OF MEMPHIS, TENN.

(Circuit Court of Appeals, Fifth Circuit. May 16, 1899.)

No. 811.

BANKS AS CORRESPONDENTS—COLLECTIONS—CONTRACTS.

An agreement between two banks, by which one agrees to "handle" the items of exchange and commercial paper of the other within a certain territory, crediting the amount of such items to the account of the other on receipt, and under which the sending bank transmits such items as collections, indorsed payable to "any national or state bank," with directions to protest and return if unpaid, is an agreement for the making of collections only, and not of purchase and sale of the paper, and does not create the relation of debtor and creditor between the two banks as to items received and credited, but uncollected, at the time of the failure of the receiving bank; and any such items, or their proceeds, which can be identified as having come into the hands of its receiver, may be recovered by the sending bank.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

The object of this suit is to recover the proceeds of a large number of checks, drafts, notes, etc.,—generally denominated "items of exchange,"—transmitted between July 31 and August 4, 1896, inclusive, by the appellee, complainant, to the American National Bank for collection. These proceeds, it is averred, were collected after the failure of the insolvent bank, and came into the hands of the receiver, the appellant. This is not a suit claiming any preference on the general assets of the insolvent bank, but simply for recovery of the proceeds of certain items of exchange remitted to said bank, collected after its failure, and turned over to the receiver later, the ownership of which is asserted in this proceeding by the complainant below, appellee here. On August 5, 1896, the American National Bank closed its doors at 3 p. m., and never opened them again for business. The following day, by direction of the comptroller of the currency, Edward I. Johnson, bank examiner, took possession of the books, assets, and property found in the bank. Subsequently the appellant qualified as receiver and took possession of the bank's property. The only arrangement ever entered into by the complainant and the American National Bank, relative to the course of business between them, is embodied in and based upon the following two telegrams and complainant's letter, all dated July 31, 1896, to wit:

Telegram.

"Memphis, July 31, 1896.

"To American National Bank, New Orleans, La.: Have mislaid your recent letter. Please write us best terms handle our N. O., La., and So. Miss. business. May decide give you our business immediately.

"C. F. M. Niles, President."

Telegram.

"New Orleans, La., July 31, 1896.

"Continental National Bank, Memphis, Tenn.: Telegram received. Will credit cash items on points named, also Texas, at par on receipt. Start the account. We will please you.    American National Bank."

Letter.

"Memphis, Tenn., July 31, 1896.

"American National Bank, New Orleans, La.—Gentlemen: I wired you this morning in regard to handling our account, and have received your wire, which is satisfactory. We will commence sending you our business to-day, and hope you will be able to handle it satisfactorily, and that you will find the account a profitable one. We are obliged to send you a somewhat large item on Baton Rouge, but this will be an exceptional one, at least in amount, and I believe

you will find our account a valuable one for your bank. We will endeavor to keep balances with you sufficient to justify any small expense in the collection of some interior items. Hoping that the arrangement we are entering into will prove mutually advantageous, and with best wishes, believe me,

"Yours, very truly, C. F. M. Niles, President."

It is true that the American National Bank wrote a letter on the same date, July 31, 1896, proposing, in effect, a modification of the telegraphic terms; but that letter, at all events, was never acted on by complainant, and it is extremely doubtful whether it ever reached Memphis in time to be considered before the failure of the bank. Accordingly, complainant commenced the same day to transmit to the American National Bank its items of exchange for collection, amounting to $5,020.88, and this was continued by further remittances of items for collection on August 1st, 3d, and 4th, the 2d of August falling on a Sunday. All letters containing remittances were headed as follows:

"Protest, unless otherwise instructed, and return at once. We enclose for collection and $\frac{credit.}{returns.}$

"Yours, respectfully, H. L. Armstrong, Cashier."

All the items contained in these letters were indorsed by a rubber stamp, as follows:

"Pay to the order of
"Any National or State Bank.
"[Date here.]
"Continental National Bank,
"H. L. Armstrong, Cashier."

This indorsement was for the purpose of vesting the said American National Bank with the necessary authority to receive and collect the same. The items transmitted in these four several letters by complainant apparently reached the bank on August 1, 3, 4, and 5, 1896, respectively, and were by the note clerk, conformably to the usages of that bank. credited to complainant on the books of the bank. Most of the items embraced in the first three letters, drawn on or payable by parties in New Orleans, were collected by the bank. Those items in the first two letters, payable at other points,—out of town items,—were sent by the bank to other banks for collection. All of the out of town items in the last two letters, of date August 3 and 4, 1896, were retained separate by the bank, and passed into the hands of the bank examiner, who took charge of the insolvent bank on August 6, 1896, and collected them through the medium of the Louisiana National Bank of New Orleans, for his account as examiner in charge. Some of the city items in these two letters were kept separate from the funds of the bank, and placed in the hands of the bank's attorney, Mr. George Denègre, on the morning of August 6, 1896 (before the bank examiner took charge), who collected the same, placed the proceeds in sealed envelopes, and indorsed thereon the amounts and the names of the parties for whose account he had so collected them. These identical proceeds, so collected by Mr. Denègre, were by him turned over, in those envelopes intact, to the examiner in charge, who delivered them to the receiver. All of the out of town items, transmitted in the first two of complainant's letters were sent by the bank, before its announced failure, to other banks, its correspondents, for collection; and they were by them collected after the failure of the bank, or if, in some few cases, they were collected before the failure, the proceeds were not forwarded to the bank by its subagents prior to the failure. Such collections were remitted to the examiner in charge, mainly, and by him paid over to the receiver, or they were, in a few instances, sent to the receiver directly.

On August 5, 1896, the board of directors of the bank met and adopted the following resolution:

"Special meeting at 8:30 p. m., Wednesday, August 5, 1896. A quorum of directors met at 7:30 p. m. this day. Present: Messrs. Gardes, Keiffer, Renaud, and Dumas. Mr. Gardes stated what had taken place during the day, and that the deposits received during the day had been set aside. The directors approved of this action, and instructed the president to hold the said deposits

separate and apart from the banking funds, and to examine carefully the condition of the bank, and report at a meeting to be held at 8:30 a. m., August 6. Duly moved, seconded, and adopted.                H. Gardes, President."

The answer admits that the bank was hopelessly insolvent on August 5, 1896, but declares that defendant is not fully advised as to knowledge by the managing officers of the financial condition of the bank previously.

On hearing in the circuit court, as shown by the amended record, the following judgment was rendered:

"This cause came on to be heard on the pleadings, exhibits, and evidence adduced, and was argued by counsel. Whereupon, on consideration thereof, the court being satisfied that the relation of principal and agent existed between the complainant and the American National Bank of New Orleans; that said American National Bank was hopelessly insolvent, and that to the knowledge of the managing officers, the president, and cashier of said bank, on or before July 1, 1896; that said American National Bank was guilty of fraud in accepting the collections of the complainant, transmitted in complainant's letters of July 31 and August 1, 3, and 4, 1896; that complainant has traced the items of collections therein set forth to the hands of the defendant, the receiver, as aforesaid; that the same had come into the possession of said receiver as follows, to wit:

Items in Exhibit B, annexed to the bill of complaint, aggregating the sum of...................................... $3,100 87
Items in Exhibit D of the bill, amounting to...................   462 81
Items in Exhibit F, amounting to...........................  4,359 11
Items in Exhibit F, collected through W. L. Moody & Co., of Galveston, Tex., amounting to.............................   326 47
                                                              ─────────
                                                              $8,249 26

—All of which came into the hands of the receiver, aggregating the sum total of $8,249.26, constituted and is a trust fund in the hand of said receiver as trustee, for the complainant; and that complainant is entitled to be paid the same, with interest, out of the funds which came into the hands of the defendant as such receiver. It is therefore ordered, adjudged, and decreed that the complainant have and recover from the defendant, F. L. Richardson, receiver of the American National Bank of New Orleans, the sum of $8,249.26, with interest at 5 per cent. per annum from the date of the filing of the bill of complaint herein, together with all costs, which is decreed to be paid within 10 days, by priority over all unsecured creditors; and that for the balance of the complainant's claim, to wit, $5,692.61, complainant be, and is hereby, recognized as a general creditor, and entitled to participate pro rata with depositors and other general creditors of said American National Bank of New Orleans in the distribution of its assets. And it is ordered, adjudged, and decreed that said defendant, receiver as aforesaid, pay to complainant such pro rata thereof as has been or may be paid to other unsecured creditors of said American National Bank.

"February 15, 1899.                [Signed]   Aleck Boarman, Judge."

F. N. Butler, for appellant.
E. M. Hudson, John D. Rouse, and Wm. Grant, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts, the opinion of the court was delivered by PARDEE, Circuit Judge.

The questions presented on this appeal are identical with those presented in the case of Richardson v. Banking Co. (just decided) 94 Fed. 442. On the facts as recited there is still less reason in claiming that under the contract between the parties the American National Bank purchased the items forwarded, and that the relation of debtor and creditor ensued as soon as the items were credited on

the books of the American National Bank. The correspondence between the parties was plainly and directly about collections only, and the course of business between the parties, so far as it was proved, prior to the failure of the bank, shows the full understanding of the parties that the business to be transacted was that of collection merely. All the items going to make up the sum of $8,249.26 are fully proven to have been collected subsequently to the failure of the American National Bank, and there is no dispute that the respective amounts thereof came to the hands of the receiver, and were sufficiently identified to show on what claims and for whose account they were collected. The objections as to the allowance of interest and the form of the judgment are allowed, for the reasons given in Richardson v. Banking Co., just decided. There has been much unnecessary trouble to the judges of this court, and probably to the judges in the circuit court, from the neglect of the parties to follow the usual rule in such cases, and have the accounting done contradictorily before a master.

The decree of the circuit court should be reversed, and the cause remanded, with instructions to enter a decree as follows: It is ordered, adjudged, and decreed that the complainant, the Continental National Bank of Memphis, do have and recover from the defendant, Frank L. Richardson, receiver of the American National Bank, the sum of $8,249.26, which said receiver is ordered to pay, out of the funds which have come to his hands as receiver, within 30 days from the signing of this decree, and by priority over all unsecured creditors of the American National Bank, or that he do within said delay certify the same to the comptroller of the currency, with a copy of this decree; and it is further ordered and decreed that for the balance of complainant's claim, to wit, the sum of $5,692.61, the said Continental National Bank of Memphis be, and is hereby, recognized as a general creditor, entitled to participate pro rata with the depositors and other general creditors of said American National Bank of New Orleans in the distribution of its assets; and it is ordered and decreed that the said defendant receiver pay to said Continental National Bank of Memphis, Tenn., such pro rata thereon as has been or may be paid to other unsecured creditors of said American National Bank, or do certify the same to the comptroller, to govern his action in the premises.

And it is so ordered.