## RICHARDSON v. OLIVIER.

(Circuit Court of Appeals, Fifth Circuit. November 20, 1900.)

No. 929.

1. BANKS—RECEIVING DEPOSIT WHEN INSOLVENT—RIGHT OF OWNER TO RECLAIM.

A check deposited in a bank on the day it closed its doors, and when it was known by its officers to be insolvent, remains the property of the depositor, who may recover the proceeds from the receiver, where they are shown to have come into his possession.

2. SAME—STOCKHOLDER AS DEPOSITOR.

The rights of a depositor in a national bank, as such, in case of the bank's insolvency, are not affected by the fact that he is also a stockholder, his duties and liabilities as stockholder being measured by the provisions of the statute; and he has the same right to reclaim a deposit fraudulently received from him when the bank was known by its officers to be in a failing condition as any other depositor, where he had no knowledge of the bank's condition, and did not participate in the frauds of its officers.

3. SAME—SUIT AGAINST RECEIVER—LACHES.

A suit by a depositor in a bank against its receiver to recover the proceeds of a check fraudulently received by the officers of the bank after its insolvency, and which came into the hands of the receiver, commenced within three years after the insolvency, is not barred by laches, in the absence of a statute of limitations which would bar an action at law of like character, where no injury to any one has resulted from the delay, which was due solely to a misunderstanding of his rights by complainant, caused in part, at least, by statements made to him by the receiver.

4. SAME—ESTOPPEL—ELECTION OF REMEDIES.

Complainant was a depositor in a national bank, and on the day the bank closed its doors, and when it was known by its officers to be insolvent, he deposited a check. On the statement of the receiver that the proceeds of the check had gone into the general funds of the bank, he included the amount of the check in the proof of his claim in the insolvency proceedings, and received partial dividends on such claim. In fact, the check was collected by the bank examiner after the suspension, and the proceeds went into the hands of the receiver. Held, that the action of complainant in including the amount of the check in his claim under such circumstances did not amount to an election of a remedy, or create an equitable estoppel which precluded him, on learning the facts, from maintaining a suit against the receiver to recover the proceeds of the check as his property, on tendering back the dividends received thereon, before the closing of the estate in insolvency, and while the money was still in the receiver's hands.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

W. C. Cochran (F. L. Richardson, on the brief), for appellant.

Henry Chiapella, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit in equity brought by P. Numa Olivier against F. L. Richardson, as receiver of the American National Bank. Between 2 and 3 o'clock p. m. on August 5, 1896, Olivier deposited in the bank a check drawn by B. F. Peters on the New Orleans National Bank for $716. The bank, when it received the check, was known to its officers and managers to be insolvent; and at 3 o'clock on that day the bank closed its doors,

and was not again opened for business. On the next morning, August 6, 1896, a bank examiner of the United States took possession and control of the bank. The check so deposited was collected by the bank examiner after the American National Bank had closed. After the check had been collected, F. L. Richardson was by the comptroller of the currency of the United States duly appointed receiver of the bank, and qualified as such receiver. The assets of the bank went into his possession as receiver, as did also the $716 collected on the check, which latter sum is now held by the receiver. The main purpose of the bill is to recover of the receiver this sum. On the facts stated, it was a fraud on the part of the bank to receive the check, if it intended to collect it and mingle the proceeds of the collection with its general assets, and for this and other reasons not material to state, the check and the proceeds of its collection remained the property of Olivier, and he, in the absence of other facts constituting a defense, would be entitled to recover the same. This has been decided in several recent decisions of this court, where the reasons are given. Richardson v. Bank, 36 C. C. A. 315, 94 Fed. 450; Same v. Denegre, 35 C. C. A. 452, 93 Fed. 572; Same v. Redemption Co., 42 C. C. A. 619, 102 Fed. 780; Same v. Coffee Co. (C. C. A.) 102 Fed. 785.

The receiver contends that Olivier is not entitled to recover (1) because he is a stockholder in the bank; (2) because of laches and delay in asserting his claim; and (3) because he is now estopped from asserting a claim to the entire proceeds of the check, he having elected to prove his claim and receive dividends as a general creditor. The facts relevant to these defenses should be stated. Olivier owned 20 shares of stock in the American National Bank. The Bank was found to be so insolvent that it was necessary for the comptroller of the currency to assess the stockholders to the amount of the par value of the stock held by them. This assessment being made, Olivier on October 20, 1896, paid to the receiver the amount of the assessment against him, $2,000. On the morning of August 5, 1896, before he deposited the check as stated, Olivier had a balance in the bank to his credit, as shown by his pass book, of $816.19. The check deposited was also entered on his book. Adding the amount of the check, $716, to the balance on the book, $816.19, the entire amount of credit on the book was $1,532.19. Richardson, the receiver, was known to Olivier to be a lawyer. The latter applied for a blank form to prove his claim against the bank. On Olivier's cross-examination by Richardson in reference to the check for $716, he was asked:

"Q. Did you say to me or did you claim that the money should be returned to you? A. Yes; I made the observation that I thought the money ought to be returned because the bank had no right to receive that deposit."

The following is from Olivier's deposition:

"Q. At the time you made that proof of claim for the whole amount, $1,532, did you ask Mr. Richardson, the receiver, whether you should include that check for $716 or not? A. Well, I made the proof for the whole amount. Mr. Richardson had told me that my check had gone into the general assets of the bank. Q. Had you ever asked Mr. Richardson, the receiver, whether you

could claim back the check or the proceeds of the check for $716 deposited on the 5th of August, on the day prior to the failure of the bank? A. Well, at the time I paid that assessment— It was at that time I asked Mr. Richardson about that check, and he said that it was gone; that it was in the general assets of the bank. So I paid the assessment. I did not think of making any opposition. I never had any lawsuit before. Q. Why did you ask him that question,—for what purpose? A. Well, because I thought they would return me that check, or the amount of that check, and I could use it to pay part of my assessment, but he told me that it had gone into the general assets of the bank."

In reference to paying the assessment of $2,000 without demanding the return of the $716, the witness testified:

"Q. Did you take my advice, or that of any other lawyer, at the time you made that payment to Mr. Richardson, receiver? A. No. Q. Upon whose assurance as to the law of the case did you act? A. Well, I thought, Mr. Richardson being a lawyer, and telling me it had gone into the general assets of the bank, I need not go to consult with any other lawyer."

It is provided by statute:

"The comptroller shall, upon appointing a receiver, cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same, and to make legal proof thereof." Rev. St. § 5235.

Under these circumstances Olivier filled up the blank so as to include both the previous deposits and the amount collected on the check, and received the receiver's certificate, dated March 10, 1897, for the entire sum $1,532.19. Afterwards he received two dividends on the claim, one of 10 per cent. and one of 5 per cent. In his bill, filed on June 19, 1899, Olivier tenders these dividends in certified checks, so far as they were payments on the money collected on the check, one for $71.60 and one for $35.80. Since the bill was filed the receiver tendered Olivier other dividends, but he declined to receive them. It was conceded in the bill that the receiver had acted in good faith, and it was not claimed that it had been his intention to deceive or mislead the appellee. The circuit court filed with the decree appealed from an opinion showing the reasons on which the decree is based. (See note.)[1]

It is claimed by the appellant that the fact that the appellee is a shareholder in the bank should deprive him of the right to secure

[1] The following is the opinion of the circuit court (PARLANGE, District Judge):

"It is evident that the complainant is entitled to recover, under the doctrine of Richardson v. Denegre, 35 C. C. A. 452, 93 Fed. 572, unless by his acts he has deprived himself of the benefit of the doctrine. I am satisfied that he has done nothing which can be successfully pleaded against him as an estoppel. No one has been injured by his acts. No one has been thereby induced to change his position to a less favorable one. Estoppels en pais are sustained to prevent the party against whom they are pleaded from gaining an unfair advantage over one whose conduct was influenced by the act from which the estoppel is claimed to result. In this case the injustice, it seems to me, would be in sustaining, and not in rejecting, the plea of estoppel. Though it is fully conceded (and in fact it is pleaded) that the receiver acted in perfect good faith, yet his statement to the complainant was material in producing the condition of

a preference. We quote from the brief of the learned counsel for the appellant:

"It may well be doubted whether a court of equity ought ever to give a stockholder of a bank a preference over the creditors of the bank, when the only ground for asking such preference is the fraud of the officers of the bank, who represent him in their dealings with depositors. He is joint proprietor of the business, interested in its profits, having a voice in the election of its directors, and therefore responsible in a measure for their conduct of the business. Why should he be preferred to general creditors, who have no interest in the profits and no voice in the management, on the score that his agents have defrauded everybody, including himself?"

The statute fixes certain liabilities on the shareholders of national banks. They are made responsible for the contracts of the bank to the amount of their stock therein at its par value, in addition to the amount invested in such shares. Rev. St. § 5151. The appellee has responded to that liability, and paid the amount of the assessment against him. The shareholders of the bank, unless they are also officers of the bank, do not participate in its active management. It is true that they select, either directly or indirectly, the officers,—the president, the cashier, and the directors,—but beyond that they do not participate in its control. When a shareholder makes a general deposit in the bank, the bank becomes his debtor, as in the case of deposits by nonshareholders. When he makes a special deposit, the relation of trust arises, as in the case of special deposits by others. There is no sound reason, we think, for refusing to give a shareholder the same remedies against the bank on account of its frauds that are given to other creditors. The shareholder who is a creditor occupies a dual relation to the bank, and his liabilities and duties in the one relation should not embarrass him in the enforcement of his rights in the other. There is no fact in evidence in this case that shows that the appellee obtained any knowledge or notice of, or that he in any way participated in, the frauds of the bank, so that he should be placed on a footing different from that of nonshareholders who had dealings with the bank. To deprive him of the rights and remedies of others would be to add to the responsibilities and liabilities imposed on him by the act of congress under which the banks are organized. To establish the doctrine advanced by the appellant would be to discourage shareholders from dealings with the banks.

things from which it is now claimed that an estoppel arises. The claimant is not chargeable with laches, under the facts of this cause; the receiver having contributed to the delay by his statement to the complainant, and no one having been injured by the delay. For the same reasons, and because complainant was not aware of the facts, the plea that he should be held to his election is not good, in my opinion. The error of mixed law and fact which caused the complainant to act as he did is such an error as a court of equity, in such a case as this, can and should relieve from. Not to do so would be unjust to the complainant, and would be giving to others an unfair advantage over him. Let there be a decree ordering the receiver to pay the complainant $716 by preference, being the proceeds of the check on the New Orleans National Bank received by the receiver after the failure of the bank. Let the decree further order that the money tendered by the complainant be paid over to the receiver."

in which they held stock, for they would always be at a disadvantage as compared with other clients of the banks. It may be said that it would make the shareholder more particular in the selection of the bank's officers, but the congress thought it sufficient to impose a fixed liability on the stockholder, and we do not find precedents requiring or permitting us to increase such liability. We think the shareholder in cases like this is entitled to the same remedies that the courts give to the nonshareholder.

The deposit of the check was made on August 5, 1896. The bill was filed on June 19, 1899, less than three years after the deposit. In the application of the doctrine of laches the rule is that courts of equity are not bound by, but they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law in cases of like character. This rule means that under ordinary circumstances a suit in equity will not be barred by laches before the time fixed by the analogous statute of limitations at law. But the statute of limitations would not always govern. If, owing to special circumstances, it was inequitable to apply the statute, it might not be applied in equity; and, if equitable considerations required the application of the bar, it might be applied in cases where the statute would not bar an analogous case at law. Our attention is not called to any statute of limitations of the state of Louisiana that would bar a suit at law by Olivier to recover the money of the bank within the period which elapsed from the deposit of the check to the time the bill was filed. It is true that, in the absence of any statute of limitations, equity discountenances gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights. This principle is applied as a matter of course in cases where to grant relief to the party guilty of the delay would do injustice to innocent third parties who acquired interests during the delay. But in this case there is no analogous statute of limitations that would bar the suit if at law. No innocent third parties have acquired interests to be affected, and such delay as has occurred was apparently caused by a mistake as to the law and the facts caused by the appellant, the defendant in the court below. The rule as to laches is established to promote, and not to defeat, justice. It appears to us that it would be inequitable and contrary to precedent to apply the doctrine to defeat the claim asserted in this suit. Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14; Williamson v. Monroe (C. C.) 101 Fed. 322; Wagner v. Baird, 7 How. 234, 12 L. Ed. 681; Billings v. Smelting Co., 2 C. C. A. 252, 51 Fed. 338, 348.

The claim that Olivier is bound by his election is in effect a claim that he is, in equity, estopped from now asserting his right to the return of the entire proceeds of his check. The answer, in fact, presents the defense in that form. The answer asserts that Olivier, on account of the facts stated, "is thereby forever estopped from altering his position in relation to said claim, and from attempting to avoid the effect of the settlement thereof which he has voluntarily accepted and made with this respondent." A brief examination of this defense will show the absence of several elements essential to

create an equitable estoppel. This will be evident from an attempt to apply the definition of equitable estoppel, as given by modern authorities, to the facts of this case. Pomeroy says:

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy." 2 Pom. Eq. Jur. § 804.

The position of the receiver has not been changed by any act of the appellee. The receiver has not in good faith acted on any representation or act of the appellee so that the change of position on the part of the appellee will injuriously affect the rights of the receiver or of those whom he represents. It could not have been Olivier's purpose to elect to prove his claim for the proceeds of the check as a general creditor because he thought he would obtain a larger dividend in that way. He could, of course, as a general creditor, or as a privileged creditor or claimant, receive no more than the amount of the check. If the bank was able to pay its debts in full, he, as a general creditor, would be paid in full; and, if the assets were not sufficient to pay in full, he, as a general creditor, would receive only a pro rata share. On the other hand, as a preferred creditor he would obtain in full the amount of the check. It is, therefore, clear that he did not elect to prove the claim as a general creditor with the expectation that he would obtain more than if he claimed a return of the amount of the check. The evidence shows that his original purpose was to claim as a privileged creditor, and he had said to the receiver that "he thought the money ought to be returned, because the bank had no right to receive the deposit," but, on the assurance of the receiver that the collection had passed into the general fund, he proved the claim as a general creditor. The acts or representations of Olivier will not create an estoppel against him, and in favor of the receiver, unless the receiver was deceived or misled. If the receiver was cognizant of the facts, he cannot claim to have been misled or deceived, and cannot urge an estoppel on account of the appellee's conduct, which indicated a different state of facts. 2 Pom. Eq. Jur. § 810. The record leads us to believe that the receiver must have known when and under what circumstances the check was collected. He should not have treated the collection as a part of the general assets of the bank. Having knowledge of the real facts, he cannot claim to have been misled by Olivier's proving the collection as a part of his account against the bank. It cannot, we think, be fairly claimed that Olivier, with full knowledge of all the facts, and without inducement or suggestion on the part of the receiver, so conducted himself in the assertion of his claim and the receipt of the dividends that it would now be contrary to equity and good conscience for him to be allowed to allege and prove the truth. The doctrine of equitable estoppel, therefore, should not be applied to this case. 2 Pom. Eq. Jur. §§ 805, 808, 809.

Some observations were made by the supreme court in the case of Dickson v. Patterson, 160 U. S. 584, 592, 16 Sup. Ct. 373, 40 L. Ed. 543, that seem pertinent to the instant case. That was a suit brought to procure a decree to rescind certain sales of real estate on the ground of fraud. The plaintiff and the defendant had been dealing in real estate together. They had made purchases and sales. The plaintiff had received some money from the defendant on a sale made by the latter on their joint account. Later he filed a bill to set aside the sale. The court below dismissed the bill on the ground that the plaintiff had elected to retain what he had received from the sale of the land in question, and to pursue his claim for moneys claimed to be still due. The circuit court held that after the alleged fraud came to his knowledge he was bound to promptly make his election, and, having elected to let the sale stand, he could not thereafter maintain an action to set it aside. The bill having been dismissed for these reasons, which we have very briefly stated, an appeal was taken to the supreme court. The supreme court reversed the decree of the circuit court, and laid much stress on the fact that Patterson's action had induced or caused the conduct of Dickson which was insisted on as an election. The court said:

"But there are other considerations which preclude Patterson from insisting that Dickson made his election of remedies, and must abide by that election. During the correspondence that took place between the parties in 1886, Dickson, so far as the record shows, was not aware that the sale and conveyance to Boehme was merely fictitious, and in execution of Patterson's scheme to defraud him. Patterson assured him that the sale was a real one, and there is no proof to show that Dickson at the time knew or believed anything to the contrary. If it was a real sale, Dickson, having joined in the deed to Boehme, could not go behind it, unless he could show that the latter did not purchase in good faith. But, from what Patterson wrote to him, he had no reason to doubt the validity of the sale to Boehme. Besides, Patterson induced Boehme to inform Dickson by letter that the amount paid was only $6,000, and that it was changed in the deed to $10,000 at his (Boehme's) request, and that Patterson was an honest man, with a good reputation. All this was well calculated to make the *impression upon Dickson that the only relief he could have against Patterson was to obtain an accounting, and a decree or judgment for such additional sum as was justly due him.*" (The italics are ours.) Dickson v. Patterson, 160 U. S. 584, 591, 16 Sup. Ct. 376, 40 L. Ed. 548.

The court held that, no rights of innocent third parties having intervened, the plaintiff ought not to be denied the fullest relief to which, according to the principles of equity, he was entitled. We think this case is instructive, as tending to show that a plaintiff should not be held to have made an election which creates an estoppel against him if his conduct in making such election was in any way influenced by the acts of the defendant. Can one doubt, to apply the language of the supreme court, that what Richardson, the lawyer and receiver, said to Olivier was well calculated to make the impression on the latter that the only relief he could have against the receiver of the bank was to obtain a pro rata distribution by proving his claim as a general creditor?

The learned counsel for the appellant has cited many cases on the point now under discussion. We shall briefly comment on the two cases which he has selected as being nearest in point. One of the cases so selected is Nanson v. Jacob, 93 Mo. 344, 345, 6 S. W.

246, 253. This was an action of trover for the conversion of a number of bales of hops. The court first held that a demurrer to the evidence should have been sustained because no conversion was proved, because "a mere bailee, whether common carrier or otherwise, is guilty of no conversion, though he receive property from one not rightfully entitled to possession, and, acting as a mere conduit, delivers it in pursuance of the bailment, if this is done before notice of the rights of the real owner." This ruling really disposed of the case, but the court further considered the effect of obtaining a judgment as on contract for the value of the hops, saying:

"There was error committed in regard to the allowance of the claim presented to the assignee of Jacob, in regard to the force and effect of said allowance. That allowance was, to all intents and purposes, a judgment, appealable from as such, and conclusive as such. The official record of the assignee shows positively that he refused to allow the claim on the basis of a conversion, but allowed it as on account. The record of the assignee also shows that Jacob was adjudged by the assignee entitled to a reduction of two and a half per cent. commission on the hops, and the claim was then allowed (i. e. with such a deduction), and it was admitted on the trial that plaintiffs had received several thousand dollars on the allowed claim; and at that time the assigned estate of Jacob was still unsettled, and it did not appear what additional payment would be made on account of allowance. In such circumstances as the foregoing, the conversion, if any had occurred, must be deemed as waived. Clearly, the plaintiffs could not have two strings to their bow,—could not ratify the act of Jacob, on the one hand, by having their claim allowed in the ordinary way, with a deduction of commissions, and then, on the other hand, proceed as for a conversion. The two proceedings were entirely incompatible. The plaintiffs were put upon their election to choose which remedy they would pursue, and, having elected to go before the assignee as aforesaid, were necessarily precluded from any other or further remedy."

The court added that:

"Any other theory announces this remarkable result: that Jacob is allowed a commission of two and a half per cent. on the value of the hops he is alleged to have converted tortiously."

And after quoting a number of cases involving the sales of personal property, in which plaintiffs were not permitted to sue for the price and also sue for the property or for its conversion, the court added:

"For the most obvious reasons, then, the plaintiffs could not with one hand gather in the proceeds of the hops in the assignee's court, and with the other hand take the hops or their proceeds in the circuit court."

The case of Burrows v. Johntz, 57 Kan. 778, 783, 48 Pac. 28, is the other case cited in the brief for appellant. In this case the claim was first allowed as a debt against the estate in the hands of the assignee. Under the Kansas laws, on the allowance of the claim it "became in effect a judgment." After the creditor had in this way obtained judgment as a creditor, he sought to obtain a preference by showing that he was entitled to a return of the entire fund on which his debt was based. The court held that the claim as last asserted was barred by the Kansas statute of limitations of three years. The court further held that the trust sought to be enforced could not be established because the evidence was not sufficient on a vital point. The court said:

"It is impossible to say, from the record, with certainty, that the assignee ever got these funds in any form. A trust is not imposed on the assignee unless the funds of the plaintiff actually came into his hands in their original form, or commingled with the estate, or had been used by the assignee to swell and increase the estate which passed by the deed of assignment."

It was after disposing of the case on these vital points that the court made the observations about the election of remedies, and held that the claimant's election to prove his claim as a general creditor was conclusive against him in his effort to establish the trust.

It will be observed that in both of the cases mainly relied on by the appellant the election made was held to have been, under the local law, in effect the bringing of a suit and the obtaining of a judgment. In neither case was the point concerning the doctrine of election necessary to a decision of the case. The defendant in neither case did anything to cause the claimant to present his claim as a general creditor. We do not question that the court in each of these cases arrived at a correct conclusion, but neither of them can be considered as controlling authority in the present case.

It is not feasible to comment on all the cases which counsel cite as bearing on the question of election and estoppel. Many of them assert well-recognized principles applied to plain cases,—cases where the plaintiff has brought a suit on a contract, and subsequently sought to avoid the same contract, and cases where a plaintiff has sued for the purchase money of chattels, and afterwards, in another suit, claimed the chattels themselves. In many of the cases the election of the plaintiff has put the defendant to costs, and placed him in a position he would not have occupied except for such election. In some of the cases the rights of innocent third parties have intervened, based on the plaintiff's election. All such cases may easily be distinguished from the instant case. In this case no suit was brought, except the one now trying. The plaintiff only proved a claim which he was required to prove by statute, and included in the proof the collection in dispute. Whether he claimed as a common creditor, or sought to obtain the entire collection, what he asked for in either case was the money. The case is not analogous in that respect to cases where a plaintiff must elect to sue for or claim specific property or its price. In this case, clearly, he was in some measure induced to take the course he took by the receiver's statement. The dividends he received, even if not returned as they were, would have been only a part payment on the entire sum that he was entitled to receive. There is not that incompatibility that would exist in a case where a plaintiff sought to gather in with one hand the property he had sold, and its purchase money with the other. The plaintiff here has only sought to obtain the money. The receiver was not deceived or misled. His position was not altered to his detriment. The rights of no third person have intervened. Olivier did not seek any advantage. He presented his claim in the first instance in a way which could not by possibility give him more than he will obtain by his suit. He acted in good faith and with no improper motive. All these considerations—not any one of them

alone—constrain us to hold that Olivier made no such election as to create an estoppel against him. The decree of the circuit court is affirmed.