## LUI LUM et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 9, 1909.)

No. 60, October Term, 1908.

1. JUDGMENT (§ 720*)—CONCLUSIVENESS—MATTER CONCLUDED—MATTER IN ISSUE—HABEAS CORPUS.

Where, on habeas corpus to determine the legality of the restraint of Chinese persons alleged to have been apprehended while unlawfully attempting to enter the country, the court determined that they had not in fact already entered at the time they were arrested, and were therefore not entitled to a hearing after due complaint before a United States commissioner, without a corresponding right of appeal, such determination was res judicata in a subsequent similar proceeding sued out in a different federal jurisdiction, to which the petitioners were taken in custody of an inspector in alleged execution of the return mandate.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. § 720.*]

2. ALIENS (§ 31*)—CHINESE PERSONS—DEPORTATION—CHINAMEN UNLAWFULLY SEEKING TO ENTER THE COUNTRY—HABEAS CORPUS.

Under commerce and labor rule 9, providing that every Chinese person refused admission to the United States, being actually or constructively on the vessel or other conveyance by which he was brought to a port of entry, must be returned to the country from which he came, at the expense of the transportation agency owning such vessel or conveyance; where the petitioning Chinese persons were apprehended in an attempt to unlawfully enter the country over the Canadian boundary, and were ordered to be dealt with according to law, an inspector had no right to take them to Hoboken, to deport them direct to China, but should have returned them to Canada.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 31.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the District of New Jersey.

See, also, 161 Fed. 627; 163 Fed. 1021.

Jackson H. Ralston and Robert M. Moore, for appellants.

H. P. Lindabury, Asst. U. S. Atty.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The eight Chinamen, who are held in custody by the respondent, as Chinese inspector, were arrested while unlawfully entering the United States from Canada, on March 20, 1908, in the vicinity of Rouse's Point, N. Y., practically at the Canadian line. Being taken to Malone, N. Y., the designated port of entry for Chinese immigrants in that section of the country, and there examined, it was found that they had no right to enter, as they had sought to do, and they were accordingly denied admission and detained by the inspector, preparatory, as it is alleged, to returning them to the country from which they came. Before this had been carried out, however, a writ of habeas corpus was sued out in the Circuit Court of the United States for the Northern District of New York on their behalf, on the ground that they were not attempting to enter, but were in fact already in, the United States when arrested, and that they could only be treated or proceeded against in consequence as being unlawfully in the country, requiring a hearing, after due complaint, before a United States commissioner, with a corresponding right of appeal from his decision to the courts, if adverse to their right to remain. This view was not sustained by Judge Ray, by whom the case was heard, and the parties were thereupon remanded to the custody of the inspector, to be dealt with according to law. Ex parte Chow Chok (C. C.) 161 Fed. 627. And this was affirmed on appeal. Id. (C. C. A.) 163 Fed. 1021.

Instead, however, of returning them to Canada, the country from whence they had come when they were apprehended, the inspector, upon the coming down of the decision, took them to Hoboken, N. J., for the purpose, as is now stated, of deporting them direct to China, the country of their supposed nativity. Being thus brought into a new jurisdiction, another writ of habeas corpus was sued out in the court below, and the point again made that the parties were to be treated as though actually in the United States, when they were arrested, and not simply as attempting to cross the border. This was rightly held by Judge Cross, by whom the case was disposed of, to be res judicata, and not open to further controversy, and so far as that is concerned the appellants have no just cause for complaint. But in remanding the parties to the custody of the inspector the fact was lost sight of that, in addition to the time that they had been detained pending the habeas corpus in the Second circuit, some 21 days had elapsed since the coming down of the mandate of the Circuit Court of Appeals, at the time of applying for the habeas corpus here, and that the inspector, instead of taking them to Canada, as he was bound and had ample time to do, had removed them out of that juris-

diction into this one, for which there was no apparent justification or excuse. Whether the purpose of this removal was disclosed at the hearing before Judge Cross does not appear; but it is now admitted, as already stated, that it was a step in the intended deportation of these parties to China, the right to which, without more, is freely asserted and maintained. To this purpose of the representatives of the government we cannot close our eyes, and whatever disposition we make of the case must be made with that in view. An unqualified affirmance of the order of the court below, remanding them to the custody of the respondent, "to be dealt with," in the terms of that order, "according to law," would naturally, if not necessarily, under the circumstances, be construed as sustaining the deportation of them; that being the conception entertained by the inspector of his authority and power. But to this we cannot agree. The subject of the deportation of Chinese persons unlawfully within the United States is regulated by numerous acts of Congress, to which it would serve no useful purpose to refer, except to say that, to justify it in any given case, it must be ordered by a United States judge or commissioner, after due complaint and hearing upon the merits,[1] with which in the present instance there has been no attempt to comply. The parties in custody are lawfully detained solely because they were seeking to enter the United States from Canada, contrary to law; and the only authority vested in the inspector was to apprehend them and turn them back. This is made clear by the rules and regulations promulgated by the Secretary of Commerce and Labor with regard to the admission and exclusion of Chinese, where it is provided:

"Rule 9. Every Chinese person refused admission to the United States, being actually or constructively on the vessel or other conveyance by which he was brought to a port of entry, must be returned to the country whence he came at the expense of the transportation agency, owning such vessel or conveyance."

By its wording this seems to be particularly addressed to a coming to the United States by vessel or other like conveyance, and a return by the same at the expense of those by whom the excluded party has been so brought, and may not, in consequence, exactly fit the case in hand. But, so far as pointed out, it is all there is; and, assuming that it applies, it affords no justification for turning a detention at the border, because of an unlawful attempt to enter, into a deportation back to China, at the will of the detaining officer, on his own individual authority, without having invoked the means provided by law for that purpose. And much less does it sanction the transportation by said

---

[1] For this we need go no further than the rules and regulations of the Department of Commerce and Labor on the subject, which declare:

"Rule 49. Orders for the deportation of Chinese persons can be made only by a justice, judge, or commissioner of a United States court, upon his decision that such Chinese persons have been found to be unlawfully within the United States."

And see, also, Act May 6, 1882, c. 126, 22 Stat. 58, as amended by Act July 5, 1884, c. 220, 23 Stat. 115 (U. S. Comp. St. 1901, p. 1305), continued in force by Act May 5, 1892, c. 60, 27 Stat. 25. (U. S. Comp. St. 1901, p. 1319), and Act April 29, 1902, c. 641, 32 Stat. 176, as amended by Act April 27, 1904, c. 1630, 33 Stat. 428 (U. S. Comp. St. Supp. 1907, p. 414).

officer from the port of detention to such other place in the country as he may deem fit, to the end that the person detained may be sent out of the country by a vessel by which he did not enter. By the explicit terms of the rule the person excluded is to be returned to the country whence he came, which in this instance was Canada, and none other, as to which the fact that the parties affected are of Chinese nationality is of no consequence. There is no certainty from that circumstance that they came originally from China. They may, or they may not. We do not know. The case is not as though they came direct by ship from a Chinese port.

Nor is there a provision, as in Act May 5, 1892, c. 60, 27 Stat. 25, in so many words, that the removal shall be to China, except as the person to be removed shall make it appear that he is a citizen or subject of some other country, in which case the removal shall be there. It may be that a return of these parties to the Canadian border will result in another attempt to cross it, in which they will be more successful, or, if not, and again apprehended, that the same proceedings will have to be gone over again. But, if the law is inadequate in this respect, it is for Congress, and not for us, to remedy it. It may be, also, that the parties before us would be liable under the law to a deportation to China or elsewhere, if the proper steps were taken to effect it; but the difficulty is that they have not been, and that is the complaint, and it is a just one. And in the absence of that there is no such short cut to it, as was admittedly contemplated when the writ went out.

It is therefore ordered that the Chinese persons in custody of the respondent, in behalf of whom these proceedings were instituted, be forthwith returned to Canada, the country from whence they had come at the time of their arrest and detention, or that otherwise they be discharged from custody as prayed for; and, as so modified, the order of the court below, remanding them to the custody of the respondent to be dealt with according to law, is affirmed.