## Ex parte WONG YOU et al.

(District Court, N. D. New York. March 16, 1910.)

1. ALIENS (§ 21*)—GENERAL IMMIGRATION ACT—APPLICABILITY TO CHINESE.

The Chinese exclusion acts are to be read in pari materia with Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), so far as they apply to Chinese aliens seeking to enter the United States; the immigration act being equally applicable to Chinese aliens surreptitiously entering the country as to other aliens.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 74; Dec. Dig. § 21.*

Citizenship of Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

2. ALIENS (§ 31*)—UNLAWFUL ENTRY—DEPORTATION.

Immigration Act Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904 (U. S. Comp. St. Supp. 1909, p. 459), provides that an alien entering the United States in violation of law shall be deported to the country whence he came. Section 21 requires the Secretary of Commerce and Labor to cause such alien to be returned to the country whence he came, as provided by section 20. Section 35 declares that the deportation shall be to the trans-Atlantic or trans-Pacific ports from which the aliens embarked for the United States, or, if such embarkation was for foreign contiguous territory, to the foreign port at which the alien embarked for such territory. Held, that where Chinese embarked from Hong Kong, China, for a Canadian port, remaining in Canada for various lengths of time, their original intention being to enter the United States, which they ultimately did from Canada illegally and surreptitiously, they were properly returned to Hong Kong, and not to Canada.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. § 31.*]

3. ALIENS (§ 32*)—CHINESE—EXCLUSION—IMMIGRATION INSPECTOR—JURISDICTION.

An immigration inspector has jurisdiction to exclude Chinese aliens found and arrested in the act of entering the United States, whether they formally applied for admission or not.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

4. ALIENS (§ 31*)—CHINESE—EXCLUSION—DEPORTATION.

Where alien Chinese are foiled in an effort to enter the United States illegally over the Canadian boundary, they are not subject to deportation to China, but only to be turned back to Canada.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. § 31.*]

Application by Wong You and others for writs of habeas corpus to procure their release from custody under orders for deportation made under immigration laws, on the ground that they were alien Chinese held in the United States under deportation proceedings. Writs dismissed, and petitioners remanded.

H. E. Owen, for the United States.

B. W. Berry, for petitioners.

RAY, District Judge. As to Hoen Chee, or Hom Chee, the writ has been dismissed, and the petitioner remanded, as his case has not been passed upon by the Commissioner of Commerce and Labor.

Wong You and Wong Cheen, or Wong Chun, were taken into custody on the 22d day of October, 1909, at Utica, N. Y., and Wong Mon Sue, or Wong Yip, and Ju Fong were taken into custody November 28, 1909, at Rouses Point, N. Y., on the allegation they and each of them were alien Chinese persons and had entered the United States surreptitiously from the Dominion of Canada at a point not designated as a port of entry and without having produced a certificate of admission or having been examined or inspected as required by the immigration laws and regulations of the United States, and had unlawfully entered and were unlawfully in the United States in violation of section 36 of the act entitled "An act to regulate the immigration of aliens into the United States," approved February 20, 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 908 [U. S. Comp. St. Supp. 1909, p. 466]); such entry having been made a few days prior to the dates mentioned. When so taken into custody, these Chinese aliens had not settled down and become a part of the resident population of the United States, not having reached their respective place of destination in the United States. Soon thereafter warrants for the arrest of said persons were issued by the Secretary of Commerce and Labor under the provisions of the immigration laws of the United States and the rules and regulations of the said Department of Commerce and Labor, and they were arrested and held thereunder and given opportunity for a full and a fair hearing and opportunity to show cause why they should not be deported under the provisions of said immigration laws and to have counsel. A full and fair hearing was had, and all evidence offered was taken and duly considered, and thereupon it was held and decided that said Chinese persons were aliens and had very recently entered the United States surreptitiously and in violation and defiance of law, as aforesaid, and were therefore unlawfully in the United States in violation of law. All the proceedings and testimony were duly transmitted to the Secretary of Commerce and Labor. The law as to a hearing was in all respects complied with, and the Acting Secretary of Commerce and Labor held that such Chinese persons were aliens, and that each of them entered the United States in violation of section 36 of the immigration laws, viz., act of Congress approved February 20, 1907, and rule 24 of the immigration regulations, and were in the United States, when arrested, in violation of law and unlawfully and had entered unlawfully.

On the 17th day of November, 1909, the Secretary of Commerce and Labor made and issued a warrant of deportation under said act (sections 36, 20, and 21) as to Wong You, Wong Cheen, or Wong Chun, and on the 4th day of January, 1910, made and issued a like warrant as to Wong Mon Sue, or Wong Yip, and Ju Fong. At the time the writ of habeas corpus was issued herein said named persons, so ordered deported, were in the custody of S. R. Horton, Chinese inspector and inspector of immigration, under such orders and judgments of deportation to whom they had been delivered for the execution of

same. The warrants for the deportation of Wong Cheen, or Wong Chun, and Wong You recite that such persons are aliens; that they entered the United States in violation of section 36 of the said act (immigration laws, approved February 20, 1907), and rule 24 of the immigration regulations, and without being inspected under any of the provisions of said act, and commands that they be deported and returned "to China, the country whence he came." In the case of Wong Mon Sue, or Wong Yip, and Ju Fong, the recitations of the warrant are substantially the same: but it does not in terms command or direct that such persons be deported or returned to China, but "to the country whence he came." However, the commissioner is directed to purchase transportation for them from Malone, N. Y., to China.

It will be noted that these proceedings have been had under the provisions of the immigration laws and immigration rules and regulations.

The petitioners claim that these proceedings had and warrants of deportation issued are null and void, and were made or granted without jurisdiction; that the immigration laws (the act referred to) have no application to Chinese aliens; that such aliens, when found in the United States, regardless of how or when they came, must be arrested and dealt with under the provisions of the Chinese exclusion acts and taken before a United States judge or commissioner, who alone may deport Chinese aliens; that, in any event, as these Chinese aliens, concededly, came from the Dominion of Canada into the United States, they must be returned to Canada; and that the warrants of deportation are void and made without jurisdiction, in that they command a deportation or return to China and not to Canada, which it is claimed is the country whence they came.

The hearings given, or trials had, were in all respects full and fair. There has been no unfair or arbitrary or unlawful action or conduct, provided the Department of Commerce and Labor had jurisdiction to ·deal with these persons at all under the immigration laws, and deport them to China or to any place. I do not doubt the right and power of the Department of Commerce and Labor to deal with these persons, Chinese aliens, under and in conformity with the provisions of the said immigration laws and the rules and regulations which are in aid thereof and supplementary thereto and authorized thereby.

(1) These persons are aliens.

(2) They entered the United States surreptitiously, not at a port of entry, and without inspection or examination. They entered in defiance and in violation of law. They came with the intention of remaining.

(3) They placed themselves in the United States by violating our laws, by their own unlawful acts, and cannot, therefore, be heard to say they are not here in violation of law, or unlawfully.

(4) They came into the United States in violation of the immigration act or laws and, being aliens, were and are subject to its provisions.

(5) Chinese aliens are not exempt from the provisions of the immigration laws, rules, and regulations.

(6) The two acts may be enforced together and are not inconsistent with each other. The immigration act does not repeal the Chinese exclusion laws or any part the_eof.

In Ex parte Li Dick (D. C.) 174 Fed. 674, the court had occasion to pass upon and decide all the questions raised here, except that of the place or country to which such alien Chinese persons so unlawfully entering and found within the United States in violation of the immigration laws shall be deported. I adhere to what was there actually decided and will not repeat it here. I also discussed the other question, but left it undecided, as it was not necessarily involved. What was said on the subject was by way of suggestion that the immigration laws are fully applicable to such cases and fully operative in all cases, except that, if in such a case as this the Dominion of Canada is held to be "the country whence he (the alien) came," and Canada will not receive the person ordered deported, then the exclusion laws must be resorted to.

Chinese aliens may come to the United States and enter in violation of our immigration laws by several different routes; as, for instance, one may embark at Hong Kong for the United States direct and land surreptitiously and enter unlawfully at San Francisco. In such case there is no question that China is "the country whence he came" and to which he must be deported. Another may embark at Hong Kong for the United States as his destination, but land at Vancouver, the destination of the vessel, and then come by rail to Montreal, remain a month, and then cross the border into the United States surreptitiously and in violation of law, as was done in the Li Dick Case, supra. If the United States was his intended destination when he left China, is there any substantial reason why China should not be held to be "the country whence he came"? True, he did not come direct and land in the United States, but he came from China to the United States as he intended to do, passing through Canada on his way. Another embarks from China for Canada with no intention of coming to the United States. He lands in Canada, complies with its laws, and remains two or five years, when he makes up his mind to come to the United States, and does so, entering surreptitiously and in violation of our immigration laws. Is China or the Dominion of Canada "the country whence he came"? Before considering these questions in their legal bearings and the statutes applicable, we will ascertain the exact status of these petitioners, as shown by the evidence.

Wong You embarked at Hong Kong for Canada intending to come to the United States, that being his destination; but he intended and expected to first land in the Dominion of Canada and then stop a little time at Montreal. He did remain at Montreal about two months without changing his purpose to come to the United States, and then continued his intended journey to the United States by automobile, entering surreptitiously at a point distant from a port of entry and without inspection and in violation of law and was taken into custody at Utica, Northern District of New York, within a day or so, and before he had actually settled down so as to become a part of our resident population. He was in fact unlawfully in the United States, having come

across the borders in violation of law. He was not in the act of entering, as were the Chinese aliens considered in Ex parte Chow Chok (C. C.) 161 Fed. 627, affirmed by 163 Fed. 1021, 90 C. C. A. 230.

Wong Cheen, or Wong Chun, embarked at Hong Kong for Canada, where he landed and remained about a year before surreptitiously entering the United States with Wong You. It does not affirmatively appear, by admission or direct evidence, that he intended, when he embarked at Hong Kong, to come to the United States, neither does it appear that he did not; and we are to ascertain his intent and purpose from what he actually did. He entered the United States, as stated, with a relative from his native village in China, who left China intending to come to the United States, and who did come, "picking up" Wong Chun on the way. I think it a fair inference from all the facts that Wong Chun left China for the United States, embarking for Canada and landing there, and was temporarily in Canada, en route, awaiting the arrival of his relative and a favorable opportunity to enter the United States surreptitiously and in violation of law which he in fact did. Time in such a case is somewhat material; but Wong Chun did nothing while in Canada tending to show that his purpose or intent was other than to do what he eventually did do—surreptitiously enter the United States in violation of our immigration laws.

Wong Yip, or Wong Mon Sue, left the United States about three years ago and went to China with the intention of returning to the United States. He returned by way of Canada, embarking from a port in China, and then surreptitiously entered the United States, from Canada, not at a port of entry, intending to evade inspection and examination, which he did. His is a plain case of coming from China into the United States, by way of Canada on a continuous journey, in violation and defiance of law. He was not of a class free to come and go.

Ju Fong, or Jue Chong, applied for admission into the United States and was rejected and returned to Montreal on or about the 21st day of October, 1909. He thereupon paid the head tax required in Canada, and thus gained the right to be and remain in Canada. He was not naturalized and did not become a subject of the Kingdom of Great Britain and Ireland. If this action on the part of Ju Fong was in pursuance of a scheme on his part to obtain entrance into the United States surreptitiously and in violation of the immigration laws and rules of the United States, and in pursuance of such scheme and in execution thereof he did so enter the United States, his must be regarded as a continuous journey from China, where he embarked for Canada, to the United States. It was but a repetition of his efforts to enter in pursuance of his intention formed on leaving China, the first of which failed. All of these persons came into the United States from contiguous foreign territory by land, but their so coming was part of a continuous journey from China to the United States with intent to immigrate to the United States, and they came with intent to remain here and become, not citizens, but a part of our resident population.

Section 20 of the immigration laws, already referred to, provides:

"That any alien who shall enter the United States in violation of law, * * * shall upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States."

## Section 21 of the act provides:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act, or of any law of the United States, he shall cause such alien within the period of three years after landing, or entry therein, to be taken into custody and returned to the country whence he came as provided by section 20 of this act," etc.

Section 22 provides that the Commissioner General of Immigration shall, under the direction of the Secretary of Commerce and Labor, have charge of the administration of all laws relating to the immigration of aliens into the United States, and he is to make and enforce rules and regulations relating thereto, not inconsistent with law.

Section 32 provides that such Commissioner General, subject to approval by the Secretary of Commerce and Labor, "shall prescribe rules for the entry and inspection of aliens along the borders of Canada and Mexico, so as not to unnecessarily delay, impede or annoy passengers," etc.

Ports of entry for aliens have been designated by law, and examination and inspection provided for, and it is unlawful for an alien to enter the United States except at a port of entry and on complying with the law as to inspection, etc. Subdivision "d" of rule 31 says the following may be deported:

"(d) Aliens who are found to have entered the United States at any other place than at the seaports thereof or at one of the ports or places designated in rules 24 and 26 hereof, and aliens found to have entered at a seaport, but at any time or place other than as designated by the immigration officers. (Secs. 18, 38.)"

## Rule 38 reads:

"Rule 38. Deportation, where to. The deportation of aliens as prescribed in rules 30 to 36 hereof shall be to the foreign trans-Atlantic or trans-Pacific port from which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which they embarked for such contiguous territory. (Sec. 35.)"

## Section 36 of the immigration law reads as follows:

"Sec. 36. That all aliens who shall enter the United States except at the seaports thereof, or at such place or places as the Secretary of Commerce and Labor may from time to time designate, shall be adjudged to have entered the country unlawfully and shall be deported as provided by sections twenty and twenty-one of this act: Provided, that nothing contained in this section shall affect the power conferred by section thirty-two of this act upon the Commissioner General of Immigration to prescribe rules for the entry and inspection of aliens along the borders of Canada and Mexico."

The provisions of law referred to make it unlawful to enter surreptitiously and in evasion of the law, and when an alien so unlawfully enters he is, of course, unlawfully in the United States. There is no question that an alien of any nationality who so enters violates the immigration laws referred to, and that all such aliens, unless it be a Chinese alien, are subject to deportation under the provisions of those

laws, on the warrant of the Secretary of Commerce and Labor. However, he is to be returned to "the country whence he came."

If, then, a Swiss emigrant, intending to come to the United States and remain and live here, leaves Switzerland and passes through France, making a month's tarry at Paris, on his way to a seaport, and then, at such seaport in France, embarks for New York in the United States, and on arrival at that port unlawfully enters in violation of law, is he, if arrested, tried and ordered deported, to be taken or returned to France, or to Switzerland?

Section 35 of the immigration act provides as follows:

"Sec. 35. That the deportation of aliens arrested within the United States after entry and found to be illegally therein, provided for in this act, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked for such territory."

The Swiss alien just mentioned, having embarked at a port in France for the United States, must be returned or deported to the port in France at which he embarked, as that would be "the trans-Atlantic port from which" such alien "embarked for the United States." Now, suppose such Swiss alien embarked at the French port for Canada, contiguous foreign territory, and there landed, and then surreptitiously entered the United States from Canada in pursuance of his intent and purpose formed on leaving Switzerland in violation of law, and was thereafter arrested, tried, and ordered deported, can there be any question that he is to be taken or deported to the French port at which he embarked for the United States? I think not. To hold otherwise would be to disregard the express mandate of section 35, just quoted. It is evident, I think, in the light of this section, that the words "deported to the country whence he came," and "returned to the country whence he came," as found in sections 20 and 21, are to be construed and held as meaning the country in which is situated the trans-Atlantic or trans-Pacific port from which the alien embarked for the United States in all cases where such alien did embark at some trans-Atlantic or trans-Pacific port for the United States, regardless of the country which he left for the purpose of coming to the United States, and also regardless of the countries through which he passed on his way to such port of embarkation, and also regardless of the fact that he embarked for and landed in foreign contiguous territory and then unlawfully entered the United States from such foreign contiguous territory. Or we may say that section 35 is to be construed as a proviso, or exception to the provisions of sections 20 and 21, and as qualifying those provisions as to the place to which deportation shall be made in certain cases, viz., those mentioned in section 35. If we hold that the words "the country whence he came" mean, in all cases, the immediate foreign country from which the alien came unlawfully into the United States, we disregard and nullify section 35. If we hold that the words "the country whence he came" mean, in all cases, the country in which the alien was domiciled, or of which he was a citizen when he formed the intent or purpose of coming to the United States and which country he left for the United States, making a continuous journey, but embarking for the United States at some trans-Atlantic or trans-Pacific

port, not in the country of his domicile or of which he was a citizen, we also disregard and nullify the provisions of said section 35 in such a case as that supposed—the Swiss alien, and many others. I am of the opinion that sections 20, 21, and 35 of the immigration laws are to be read and construed together; section 35 qualifying and limiting the two former sections. By this construction we do no violence to either section, but give effect to each and all of them.

These four Chinese aliens whose cases are now being considered embarked from Hong Kong, China, a trans-Pacific port, for the Dominion of Canada, which is foreign contiguous territory, and there landed. Their destination, however, was the United States, and to the United States they came after landing in Canada and without having become actually and bona fide domiciled there, or citizens of that foreign country. It so happens that they are citizens of China, the country in which they lived and formed the intent of coming to the United States, and from which they embarked for the purpose of coming to the United States by way of Canada. They are to be deported to Hong Kong, in China, not because they are citizens of China, or for the reason they left China for the United States by way of Canada, but for the reason that they embarked for foreign contiguous territory from a trans-Pacific port, intending to come to the United States through or by way of such foreign contiguous territory, and entered the United States unlawfully. Section 35, quoted says; "arrested within the United States after entry and found to be illegally therein," etc. It has been suggested that there is significance in the words "after entry," and that these words suggest a regular entry into the United States in the regular way, but that some fraud was practiced in obtaining such entry so that the person is illegally in the United States, and that the section is applicable to such cases only. I see no force in such contention. I think the section applies to all aliens, coming within its provisions, found to be illegally in the United States because of the fact they entered in violation of the immigration laws. To come within the provisions of section 35, the alien person or persons must have embarked for the United States from some trans-Atlantic or trans-Pacific port, or from one of such ports to foreign territory contiguous to the United States, and must, after landing, have entered the United States in violation of the immigration laws and have been found therein (within three years of his entry), in which case he is to be "adjudged to have entered the country unlawfully and shall be deported as provided by sections twenty and twenty-one of this act," as qualified by section 35, which must be read in connection therewith.

In construing a statute it is to be taken as a whole. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word, and that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each. Washington Market Co. v. Hoffman, 101 U. S. 112, 25 L. Ed. 782. Statutes are to be so construed, if practicable, that one section will not defeat or destroy another, but explain and support it. Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152. The intention of the Legislature,

when properly ascertained, must govern in the construction of every statute, and single sentences and single provisions are not to be selected and construed by themselves; but the whole statute must be examined, and all its provisions construed together. Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376. When we read sections 20, 21, and 35 all together and in connection with the others, there is no doubt of the intent and effect. Section 20 uses the words "who shall enter the United States in violation of law." Section 21 uses the words "has been found in the United States in violation of this act." Section 35 says "found to be illegally therein." Section 36 says "shall be adjudged to have entered the country unlawfully." I think that where an alien of any nationality, including a Chinese alien, is found in the United States in violation of the immigration laws, and is found to have gained entrance by violating those laws and the rules duly made, which have the force of law, he is to be adjudged to have entered the country unlawfully and deported on the warrant of the Secretary of Commerce and Labor to the country whence he came, viz., Brazil, if he was a resident and domiciled there and came by land; or to France if he came from Switzerland by way of France and then embarked for the United States and landed there, or embarked for Canada and came thence into the United States; or to China, if he embarked at a port in China for the United States and landed in the United States, or embarked at a port in China for any contiguous foreign territory, as Canada or Mexico, and came thence into the United States pursuant to a design to do so formed at or before leaving China or even on the voyage.

In the Chow Chok Case (C. C.) 161 Fed. 627, affirmed by the Circuit Court of Appeals, the Chinese aliens were apprehended in the very act of crossing the border from Canada into the United States, taken before a Chinese inspector, and admission denied. On habeas corpus this court held that such persons were not found unlawfully in the United States within the meaning of the Chinese exclusion laws, as they were in the act of entering when taken into custody, and that the inspector had jurisdiction, and the persons were remanded. Instead of treating them as persons merely seeking admission and refusing them admission and turning them back to Canada, the inspector sought to deport them to China, and they were taken to Hoboken, N. J., for the purpose of taking them to China. On habeas corpus in the District of New Jersey, Third Circuit, it was held that the decision of this court was res adjudicata, and they must be returned to Canada, not having been found unlawfully in the United States. Lui Lum et al. v. United States, 166 Fed. 106, 92 C. C. A. 90.

I find no point actually decided in those cases in conflict with the views here expressed. The inspector had jurisdiction to exclude Chinese aliens found and arrested in the very act of entering the United States, whether they formally applied for admission or not. Being denied admission, they were to be turned back and prevented from entering, and the fact that they were foiled in an effort to enter the United States in violation of our laws did not subject them to the penalty of being sent to China. If a Chinese alien comes to a regular

port of entry on the Canada border and asks admission, or is taken there to determine his right to enter, and is denied admission, he is simply turned back. He has not subjected himself to any 'penalty, or forfeiture, or punishment, and cannot be subjected to any. Here we have a different situation. These Chinese persons were actually within the United States, on our territory distant from the border, and had gained such points in the United States before being apprehended, and, on the evidence, it has been duly adjudicated by the inspector and the Department of Commerce and Labor that such persons were and are unlawfully in the United States, having entered in violation of law; that is, in violation of our immigration laws. This finding was based on sufficient and competent evidence and cannot be disturbed by the courts. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369. The result is that deportation follows, and that deportation is regulated and determined as to country to which made, by section 35 of the immigration act of February 20, 1907, hereinbefore quoted.

The writ is dismissed, and the petitioners remanded.