UNITED STATES v. YUEN PAK SUNE, alias YUEN PAK SUEN, alias PAK THUNE et al.

(District Court, N. D. New York. November 10, 1910.)

1. ALIENS (§ 31*)—DEPORTATION OF CHINESE—CHINESE UNLAWFULLY IN UNITED STATES.

A Chinese alien and subject of the Chinese Empire not of the exempt classes, who knowingly crosses the Canadian border into the United States, but not at or near any established port of entry, with the purpose of entering and remaining in the United States, who is apprehended after he has crossed the boundary and taken before a Commissioner of Immigration at the nearest port of entry and given a hearing as an applicant for entry, and after such hearing is refused admission and ordered returned to Canada, but who cannot be returned because of the demand of the Canadian authorities for a head tax which he refuses to pay, is found, and is unlawfully, in the United States, and subject to arrest and deportation under the Chinese exclusion laws. Act May 5, 1892, c. 60, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1319) extended by Act April 29, 1902, c. 641, § 1, 32 Stat. 176, and by Act April 27, 1904, c. 1630, § 5, 33 Stat. 428 (U. S. Comp. St. Supp. 1909, p. 473).

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. § 31.*]

2. ELECTION OF REMEDIES (§ 10*)—DEPORTATION OF CHINESE—RIGHT TO DEPORT—WANT OF KNOWLEDGE OF FACTS.

The treating of such Chinese person in the first instance as an applicant for entry and the order directing his return to Canada was not an election of remedies by the United States which precludes his subsequent deportation to China, since prior to his hearing his status could not be known nor was it known that he could not be returned to Canada in obedience to the order, but the ascertaining of such facts determines that he was unlawfully in the United States.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 13; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceeding by the United States against Yuen Pak Sune, alias Yuen Pak Suen, alias Pak Thune, Ng Sin, Ng Len Koon, Ng Dick, and Ng Yee Hing.    Order for deportation of defendants.

On the complaint of George W. Ketcham, one of the Chinese Inspectors of the United States, and a warrant duly issued, these five Chinese persons are before me as United States District Judge for the Northern District of New York, under the provisions of the Chinese exclusion laws (Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319] extended by Act April 29, 1902, c. 641, § 1, 32 Stat. 176 and Act April 27, 1904, c. 1630, § 5, 33 Stat. 428 [U. S. Comp. St. Supp. 1909, p. 473]), on the claim that they are alien Chinese persons, and not of the privileged classes, and that on or about the 14th day of October, 1910, they were found unlawfully in the United States, and are now unlawfully in the United States, having placed themselves therein unlawfully, etc.    Deportation to China is sought.

George B. Curtiss, for the United States.
Yuen Pak Sune, in pro. per.
Ng Sin, in pro. per.
Ng Len Koon, in pro. per.
Ng Dick, in pro. per.
Ng Yee Hing, in pro. per.

RAY, District Judge.    As the essential facts in the five cases are the same I will in this opinion recite the facts fully in but one, that of Yuen Pak Sune, or Suen, or Pak Thune.    When brought before me, the defendants were informed of their rights, and of their right to be represented by counsel, or to see any one they or either of them knew, or any one they or either of them desired to see.    Each one stated he did not know any one in the United States, had no relatives here (except in one case) so far as he knew, and that there was no one he desired to see.    Each expressed a willingness to be sworn and was sworn and examined, and from the testimony and statement of Yuen Pak Sune under oath it appears:

(1) That the first he remembers or knew of himself he was living in China either alone, or with his mother, in Hung Mei village, Sunming district, Lower China; was married there; did no work of any kind and never did; and is now 20 years of age.    He says he does not know the name of his father, or mother, or wife, or number of his children, and never did.

(2) He came from China to Vancouver, B. C., on the steamship Empress of China in June or July, 1910, where he landed and remained about three weeks, and went thence by railroad to Montreal, where he says he remained about a month and then left by rail with a ticket, he says, for Boston, Mass.    He claims he did not pay his own passage; that a ticket was sent him by mail for his passage from Vancouver to Montreal unaccompanied by any letter or writing.

(3) The latter part of September, 1910, he left Montreal for Boston, he says.    He found himself on the train with the four other Chinese persons, strangers to him, and who were arrested with him

and came by train a distance and then took a team with the other Chinese, such team being driven by a white man unknown to him, and came a further distance, and then took a train for Boston. He denies purchasing a ticket for his journey from Montreal, but says it was furnished by some one entirely unknown to him. Says he paid no board in Montreal, and did no work. He denies all knowledge of the other Chinese persons referred to up to the time he took the train at Montreal.

It is evident that he tells the truth in some things and testifies falsely in others. So far as he knew, he was never in the United States until the latter part of September, 1910, and so far as he knows has no means of showing he ever was here. He makes no claim that he was born in the United States. The evidence of Mr. Ketcham, the Chinese Inspector, and certain documentary evidence, proves that on the 26th day of September, 1910, five Chinese persons, including Yuen Pak Sune, were together in a carriage drawn by horses in Canada and approaching the border between the United States and Canada near North Burke, and were watched until they came into the United States, and had showed an intent to come and remain in. They were then arrested and treated as alien Chinese persons seeking to enter the United States, and taken before Gec. B. Billings, United States Commissioner of Immigration, at Boston, Mass., the nearest port of entry. Here they were given a full and fair opportunity to show their right to enter, but after a full and fair hearing and being sworn in their own behalf were refused admission, and ordered turned back into and returned to Canada. From the decision of the commissioner, no appeal has been taken. The officers charged with the duty of returning Yuen Pak Sune and the other four Chinese taken with him to Canada attempted to do so, but the officials of that Dominion refused to receive them or allow them to return to Canada or to be brought or taken into Canada unless they each paid the sum of $500 as a head tax required of every Chinese person entering that Dominion.

Yuen Pak Sune, this defendant, and the other four Chinese, were informed of this, but they each stated they had no money to pay a head tax, and did not, whereupon they were liberated and at once taken into custody at Malone, Franklin county, N. Y., in the Northern District of New York, as alien Chinese persons found and being unlawfully in the United States, and thereupon they were taken before the United States District Judge and sworn complaint made and a warrant of arrest issued and this proceeding instituted.

The decision or judgment of Commissioner Billings on the application of this defendant to enter and rendered at Boston, Mass., September 30, 1910, is as follows:

"In re the case of Yuen Pak Sune, applicant for admission to the United States, he having left Montreal at 8 a. m. on September 26, 1910, and crossed the United States border line at North Burke, N. Y., at 4:40 p. m. same date. Serial #393. Having carefully reviewed all the evidence submitted in this case, I am not satisfied that the applicant has established his right to admission. I therefore find and determine that Yuen Pak Sune is an alien Chinese person, not a member of any of the exempt classes of Chinese entitled to

come into or remain in the United States, and he is accordingly this day denied admission. Geo. B. Billings, Commissioner."

The question presented is whether a Chinese alien not of the exempt classes who crosses the Canadian border into the United States, but not at or near any established port of entry, and who knowingly enters on United States territory with the evident and thereafter declared purpose of entering and remaining in the United States, and who is apprehended by the immigration officers of the United States while he is in the act of entering, but after he has purposely crossed the boundary line into the United States in violation of its laws, and who is then treated as a Chinese person seeking to enter the United States and applying to enter, so far as to take him before a United States Commissioner of Immigration at the nearest port of entry and give him an opportunity to apply for admission, and who after so applying is given a full examination and inquiry and then refused admission to the United States and ordered turned back and returned to Canada, but who cannot be returned to Canada for the reason the Canadian authorities refuse to receive him except in payment of the $500 head tax required by its laws of all Chinese persons seeking to enter that Dominion from any foreign territory, which payment is refused by such Chinese person and is not made, is then found unlawfully in the United States, and is unlawfully in the United States and subject to arrest and deportation under the provision of the Chinese exclusion laws.

In my judgment such Chinese persons under such circumstances are unlawfully in the United States, and are then found unlawfully in the United States, and are then subject to arrest and deportation under the provisions of the Chinese exclusion laws. Such Chinese persons are not on United States soil for the purpose of applying for admission and invited, taken, or permitted to come thereon temporarily for the purpose of applying for admission. Citizens of the United States, and this includes Chinese persons born here, are entitled to enter the United States at any point or place. I know of no law forbidding them to do so. Alien Chinese persons, not of the exempt classes, may be and are by law forbidden to enter at any point or place, and are excluded absolutely, and it is made the duty of certain officials to exclude them when they apply or seek to enter. Points called ports of entry have been designated by law for the entry of all aliens into the United States, and, when aliens whose entrance is forbidden enter at other points, they enter illegally and in violation of law, and are thenceforth illegally in the United States. It is, however, impossible and impracticable for the United States by its officials to stand at all highways and places of possible entrance on the borders and examine the Chinese who approach or cross the border line. They cannot be repelled by force or forcibly driven back across the line if the officer meeting them suspects they are not citizens of the United States. Chinese aliens are now coming in droves and in groups to various points on the border and crossing into the United States. They make no pretense of going to the ports of entry. They openly violate and designedly disregard the law,

evidently at the instigation of various persons engaged in the illegal importation of Chinese aliens into the United States. This fact has come to my knowledge in numerous cases. We have the immigration laws and the Chinese exclusion laws, which are, to my mind, if properly construed and administered and enforced, ample to secure the rejection and exclusion and deportation of all Chinese aliens not entitled to enter or to be and remain in the United States. The Circuit Court of Appeals, Second Circuit, has held (Wong You et al. v. U. S., 181 Fed. 313, reversing Ex parte Wong You et al. [D. C.] 176 Fed. 933) that alien Chinese laborers who clandestinely and surreptitiously and in violation of law enter the United States at other points than ports of entry, and, of course, without any examination or opportunity for examination, cannot be dealt with and deported under the provisions of our immigration laws. This is, of course, and necessarily, a holding that alien Chinese are under our laws a privileged class of aliens, a class that must be dealt with under the provisions of the Chinese exclusion laws, and not under our immigration laws. No amount of sophistry can change this fact. It was, of course, competent for the Congress of the United States to so legislate and provide. I have held and am of the opinion that Chinese who enter the United States at points other than ports of entry, and who are apprehended in the very act of entry and before it is completed fully, and who are joined by United States inspectors at the boundary line, and accompanied by them into the United States and then taken into custody, are to be treated in the first instance as Chinese persons seeking to enter the United States, and are entitled to be taken before the Commissioner of Immigration at the nearest port of entry and given an opportunity to apply for admission, and show their right to enter, as, for instance, that they were born in the United States, and are therefore entitled to come in at will at any point, or that they belong to the diplomatic corps, etc. Ex parte Chow Chok et al. (C. C.) 161 Fed. 627, affirmed by 163 Fed. 1021, 90 C. C. A. 230. If they avail themselves of this opportunity and show a right to enter, they are admitted and set at large in the United States, and, in the absence of fraud, this action would be and is final and conclusive in their favor. If, however, it is decided that they were not born in the United States, are not citizens of the United States, and are not entitled to enter, this determination should be conclusive of that fact, unless reversed on appeal to the Department of Commerce and Labor, or by the courts in case of arbitrary or illegal action. United States v. Ju Toy, 198 U. S. 253, 260, 261, 262, 263, 25 Sup. Ct. 644, 49 L. Ed. 1040.

If such Chinese persons are, on such application and examination, denied admission to the United States, and an order is made denying them admission and turning them back, as in this case, to the Dominion of Canada whence they came directly into the United States, and the foreign country, as Canada in this case, refuses to receive them, they having voluntarily actually left that country and actually entered the United States so that Canada is under no obligation to receive them, and it would be contrary to the laws of the Dominion of Canada

to receive them without the payment of a head tax of $500 each, which such Chinese persons are unable to pay and refuse to pay, are or are not such Chinese persons subject to the provisions of the Chinese exclusion laws, subject to arrest and to deportation under such laws if found on examination under such laws to have no right to be and remain in the United States where they have placed and find themselves by their own unlawful and wrongful acts done in violation of our laws? By treating them fairly has the United States lost any right or waived its right to deport them under the Chinese exclusion act? If the Dominion of Canada will not receive them, do such Chinese gain the right to remain and be in the United States? Must the United States pay the head tax if she would be rid of them? As stated, the United States has neither invited them in, brought them in, nor consented to their being or remaining in the United States. This government has simply given them the right in the first instance to show that they had and have the right to enter. In this they fail. They are in the United States by their own voluntary and wrongful acts, and cannot be turned back into or returned to the Dominion of Canada because of her laws with which such Chinese persons are unable to comply and with which they refuse to comply. Are they rightfully in the United States or entitled to remain here? Clearly not. These Chinese have failed to show before the Commissioner of Immigration a right to enter. He holds they were not born in the United States. Before me the same question has been gone into fully, and these Chinese persons have been given an opportunity to show they are of the exempt classes of Chinese, or that they were born in the United States, which they fail to do. I hold that they have not shown a right to be in the United States, and that they are alien Chinese persons not of the exempt classes, and that they left China with the purpose of coming into the United States by way of the Dominion of Canada, which is contiguous foreign territory, and that they cannot be returned or deported to that country without the payment of a head tax of $500 on each person, and that the United States is under no duty or obligation to pay such tax, and that such persons have refused to pay same, and that by their own wrongful acts and willful violation of the laws of the United States and failure to comply with the laws of Canada they have placed themselves in the United States and are now unlawfully here and not entitled to remain, and are subject to deportation under the provisions of the Chinese exclusion laws. In this case the Chinese persons were not accompanied across the border by inspectors of the United States government, but were seen to cross and taken in custody very soon thereafter.

When Chinese aliens or aliens of any nationality of any class apply for admission, they should come to a proper port of entry, and, when they are refused admission, they are simply turned back, and under all ordinary circumstances, when they do apply, they are regarded by both governments as on the foreign soil that they seek to leave all the time. But this has no application, and cannot bind the foreign country when alien Chinese (not citizens of Canada) actually

leave that country intending to go to and remain in the United States, and surreptitiously or otherwise actually enter the United States, not at a port of entry and without the permission of the United States. This is especially true of Chinese aliens, subjects of the Chinese Empire. I know of no rule or principle of international law which obligates the Dominion of Canada to take back Chinese aliens who go to that country from China, and then pass voluntarily into the United States.

Nor can it be said that the United States by giving to these Chinese who come unlawfully into the United States a fair hearing before a Commissioner of Immigration, and treating them in the first instance as Chinese persons applying to enter, has elected its remedy, having two and. being at liberty to pursue either, and has thereby precluded itself from resorting to the Chinese exclusion laws. That these Chinese were alien Chinese, or that they were not citizens of Canada, subjects of Great Britain who would not be received without the payment of a head tax, were not known or predetermined facts. Neither was it known nor could it be known that they would not pay their head tax and comply with the laws of Canada if treated as persons applying for and on examination refused admission to the United States. That, under the provisions of the Chinese exclusion laws, they were illegally in and found illegally in the United States, was not finally determined or known until they refused to pay their head tax and return to Canada. Refused permission to remain in the United States, they might have returned and were given the opportunity to return to Canada, whence they immediately came, on paying the head tax required by the laws of that Dominion. This they refused to do. From that moment they were certainly illegally in the United States of their own volition and because of their prior illegal acts and present conduct, and from thenceforth subject to deportation under the provisions of the exclusion laws. This condition of things or state of facts did not exist when these persons were given the hearing before the commissioner at Boston, and they were ordered back to Canada.

An election of remedies presupposes the then existence of all the essential facts giving both remedies and also knowledge of such facts. "And broadly speaking, an election of remedies is the choice by a party to an action of one or two or more coexisting remedial rights where several such rights arise out of the same facts." Tidd, Pr. (2d Am. Ed.) 9. See, also, Hays v. Midas, 104 N. Y. 602, 11 N. E. 141; Dickson v. Patterson, 160 U. S. 584, 16 Sup. Ct. 373, 40 L. Ed. 543; Spread v. Morgan, 11 H. L. Cases, 588, 615; E. C. Foundry Co. v. Hersee, 103 N. Y. 25, 9 N. E. 487; 15 Cyc. 252, 262, and numerous cases cited.

These proceedings are civil, not criminal (Fong Yue Ting v. U. S., 149 U. S. 698, 730, 13 Sup. Ct. 1016, 37 L. Ed. 905; U. S. v. Meng, 196 U. S. 635, 25 Sup. Ct. 794, 49 L. Ed. 629; Ah Sou v. U. S., 200 U. S. 611, 26 Sup. Ct. 752, 50 L. Ed. 619), and hence an order turning these Chinese back to Canada, not executed and incapable of execution, and a subsequent order of deportation to China based on a

full knowledge of all the facts and acts done by these persons thereafter, are in no sense a punishment or a double punishment for the same acts. The deportation of Chinese aliens is a right which the government of the United States may exercise in its own way and at its own pleasure as authorized by Congress. Fong Yue Ting v. U. S., 149 U. S. 698, 724, 13 Sup. Ct. 1016, 37 L. Ed. 905. Citizenship and the right to be and remain in the United States, if claimed, must be proved by the Chinese person. The burden of proof is on him. Chin Bak Kan v. United States, 186 U. S. 193, 200, 22 Sup. Ct. 891, 46 L. Ed. 1121; Chin Ying v. United States, 186 U. S. 202, 22 Sup. Ct. 895, 46 L. Ed. 1126; Ah How v. United States, 193 U. S. 65, 76, 24 Sup. Ct. 357, 48 L. Ed. 619.

The Chinese exclusion laws themselves (Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319]) provide:

"That any Chinese person, or person of Chinese descent, arrested under the provisions of this act, or the acts hereby extended, shall be adjudged to be unlawfully within the United States unless such person shall establish by affirmative proof to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

This is upheld as a valid and constitutional provision. Ah How v. United States, 193 U. S. 65, 76, 24 Sup. Ct. 357, 48 L. Ed. 619.

And Act May 5, 1892, c. 60, 27 Stat. 25, extended by Act April 29, 1902, c. 641, § 1, 32 Stat. 176, and by Act April 27, 1904, c. 1630, § 5, 33 Stat. 428 (U. S. Comp. St. Supp. 1909, p. 473), in section 2 provides:

"That any Chinese person or person of Chinese descent, when convicted and adjudged under any of said laws to be not lawfully entitled to be or remain in the United States, shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge or commissioner before whom he or they are tried that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country: Provided, that in any case where such other country of which such Chinese person shall claim to be a citizen or subject shall demand any tax as a condition of the removal of such person to that country he or she shall be removed to China."

The burden is on the Chinese to show he is entitled to be deported elsewhere than China. U. S. v. Sing Lee (D. C.) 125 Fed. 627; U. S. v. Lee Kee, 116 Fed. 612, 54 C. C. A. 68; 20 Op. Atty. General, 171.

These Chinese persons now in question neither gave nor offered any proof that they were citizens or subjects of any country other than China. They are illegally in the United States, not citizens or subjects of any country other than China, and they came from China by way of Canada into the United States in violation and defiance of our laws. They have been fairly treated and given a full opportunity to show a right to either be or remain here, which they have failed to do. They know no one here, and evidently belong to that class of illegally imported Chinese who come, or are sent, or are sent for, and take their chances of not being arrested, or, if necessary, of finding witnesses here willing to swear they were born in the United States.

There will be an order of deportation to China in each case.